DECISION
Gary D. Atkinson, defendant-appellant, appeals the judgment of the Franklin County Court of Common Pleas wherein the court found him guilty for having committed safecracking, in violation of R.C. 2911.31, a fourth-degree felony; receiving stolen property, in violation of R.C.2913.51, a fifth-degree felony; and tampering with evidence, in violation of R.C. 2921.12, a third-degree felony.
On May 29, 2000, at approximately 1:00 p.m., Columbus Police Officer Pamela Belmonte responded to a call that a door was open at Johnny Remali's Pizza. She and another officer discovered that the front door had been pried open and a safe had been removed. Antoinette Hill, who owns the business with her husband, was contacted and eventually recovered a videotape from the security camera. The videotape revealed one person entering the business, removing a safe, and pushing it through a window. Two of the business's employees identified the man who took the safe as Dempsey Smith and indicated that Smith had been at the store the night before with appellant and Rick Bronson, who worked at the pizza shop. After viewing the videotape, Bronson initially denied knowing the person on the tape. However, after Hill told Bronson's father, who also worked at the pizza shop, about the incident, Bronson's father called Hill and told her that Bronson wanted to speak to her about what had happened. Bronson told Hill limited details of the crime and eventually implicated Smith and his cousin, appellant. Bronson also took Hill to the dumpster where the safe was recovered. A few days later, Bronson spoke to Columbus Police Detective Gregory Bodiker and admitted that he stayed in the backseat of the car while Smith and appellant burglarized the pizza shop.
On July 16, 2000, a five-count indictment was filed against appellant, which included charges for breaking and entering, possessing criminal tools, safecracking, receiving stolen property, and tampering with evidence. A jury trial commenced on January 9, 2001. At the close of all evidence, appellant moved for acquittal on all charges, and the trial court granted such motion as to the charge of possession of criminal tools. On January 11, 2001, the jury found appellant guilty of safecracking, receiving stolen property, and tampering with evidence, and not guilty of breaking and entering. Appellant was sentenced to three years on the tampering with evidence charge, twelve months on the safecracking charge, and nine months on the receiving stolen property charge, all of which were to run concurrently with each other. Appellant appeals the jury verdict, asserting the following assignments of error:
 I. Gary Atkinson's conviction was based upon insufficient evidence.
 II. Gary Atkinson's conviction was against the manifest weight of the evidence.
Appellant argues in his first assignment of error that his convictions were based upon insufficient evidence. In State v. Jenks (1991),61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. Id., at paragraph two of syllabus. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
Appellant was found guilty of safecracking, receiving stolen property, and tampering with evidence. With regard to the safecracking conviction, R.C. 2911.31 provides:
 (A) No person, with purpose to commit an offense, shall knowingly enter, force an entrance into, or tamper with any vault, safe, or strongbox.
 (B) Whoever violates this section is guilty of safecracking, a felony of the fourth degree.
With regard to the conviction for receiving stolen property, R.C.2913.51 provides, in pertinent part:
 (A) No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense.
* * *
 (C) Whoever violates this section is guilty of receiving stolen property. * * * If the value of the property involved is five hundred dollars or more and is less than five thousand dollars, if the property involved is any of the property listed in section 2913.71 of the Revised Code, receiving stolen property is a felony of the fifth degree. * * *
With regard to the conviction for tampering with evidence, R.C. 2921.12
provides, in pertinent part:
 (A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:
 (1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation;
* * *
 (B) Whoever violates this section is guilty of tampering with evidence, a felony of the third degree.
Appellant does not address any specific elements of any of the crimes he was found guilty of committing. Appellant only argues in general terms that there was insufficient evidence that he was involved in any way with any of the crimes. We disagree. Hill, one of the owners of the pizza shop, testified that Bronson had been seen at the pizza shop the night before with appellant and Smith, who was the man seen in the surveillance video taking the safe. After Bronson initially denied to Hill that he was involved, Hill spoke with Bronson's father, who later telephoned Hill and told her that his son wanted to talk to her about what happened. Hill testified that Bronson told her that he, Smith, and appellant committed the crime, that they took the safe to appellant's house, broke it open, split the money, and disposed of the safe in a dumpster. The safe was recovered in a dumpster, where Bronson had told Hill it was, inside two trashbags. She stated that Bronson told her appellant drove the car to the crime scene but did not actually go into the pizza shop. She testified that Bronson was a "little bit slow" and had trouble reading.
Bronson, who is eighteen and appellant's cousin, testified that appellant introduced him to Smith on the date of the crime. He stated that on the day of the crime, he went to appellant's house and drank a few "Zimas" and smoked "a joint" with four others. He, appellant, and Smith then drove to the pizza shop and Bronson went in to pick up a pizza they had ordered. Melissa Starkey, who formerly worked at the pizza shop, testified that she saw Bronson pick up a pizza the night of the crime and get back into a car with appellant and Smith. Bronson then went back to appellant's house, drank a few more Zimas, and ate the pizza. He said he drank a total of six or seven Zimas that night but was not drunk. While eating, Smith and appellant started asking him about the pizza shop, the surveillance cameras, the safe, and where they kept things. About three hours later, appellant drove Smith and Bronson, who was laying down in the backseat, back to the pizza shop. When they got to the pizza shop, appellant and Smith, who had a crowbar, got out of the car and told Bronson to stay there. Officer Belmonte testified that she recovered a black crowbar inside the pizza shop. Later, Smith and appellant returned and Smith threw the safe in the backseat. Bronson testified that they went to appellant's house, appellant got another crowbar from a closet and opened the safe, and Smith and appellant divided the money between the two of them. Bronson identified a crowbar found at the scene of the crime as the same type of crowbar that had been taken to the pizza shop and used to open the safe. He admitted he was intoxicated at this point, but he was certain that it was appellant who drove them to the pizza shop and later opened the safe. They put two trashbags over the safe, and he and Smith put the safe in a dumpster at appellant's direction.
Bronson testified that the next day he went to the pizza shop and saw the surveillance videotape, but he was too scared to tell Hill what had happened. His father eventually confronted him with co-workers' allegations that they had seen Bronson with Smith and appellant the day of the crime. Bronson testified he told his father what had happened and then went to the pizza shop where he confessed to the Hills. However, he admitted that at first, he lied to the Hills and police, saying that he had passed out and was not with Smith and appellant at the time of the burglary. He later admitted to the police that he was with them in the car and helped dispose of the safe.
Detective Bodiker testified that at first Bronson did not tell him that he or appellant participated in the burglary. When he met with Bronson again a few days later, Bronson eventually admitted that he was with Smith and appellant at the time of the crime, but that he stayed in the car. He also testified that they discovered two crowbars at appellant's house after issuing a search warrant and recovered another crowbar at the scene of the crime. He testified that besides the crowbars, there was was no physical evidence linking appellant to the crime.
Detective Bodiker also stated that after he scheduled an appointment with appellant, appellant called and said he could not make it to the police department but invited the detective to come to his house. He admitted appellant's invitation was "unusual." He also testified that when the crowbar recovered from appellant's house is held up to the pry marks on the safe, they match perfectly, and paint on the end of the crowbar matched the color of the paint on the safe. He admitted that he believes Bronson is easily influenced and stated that he still thinks Bronson is not telling the truth in that he did not get any of the money from the safe and that appellant did not help dispose of the safe.
Construing the evidence most strongly in favor of the state, as we are required to do in conducting a review of an insufficient evidence argument, any rational trier of fact could have found appellant committed the crimes beyond a reasonable doubt. Bronson's testimony, if believed, established that appellant received property, the cash and safe, belonging to the Hills, and that he knew the property was obtained through the commission of a theft offense. There was also sufficient evidence that appellant forced entrance into the safe. Bronson testified that appellant had used a crowbar to pry open the safe, which had previously been in working order, according to Hill. There was also sufficient testimony that appellant concealed the safe with purpose to impair its availability as evidence. Bronson testified that appellant helped place the safe in plastic bags and directed Bronson and Smith to throw it in a dumpster. Therefore, we find that the jury's determination was supported by sufficient evidence, and appellant's first assignment of error is overruled.
Appellant argues in his second assignment of error that the jury's verdict was against the manifest weight of the evidence. The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other. State v. Gray (Mar. 28, 2000), Franklin App. No. 99AP-666, unreported. "In order for the court of appeals to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court must unanimously disagree with the factfinder's resolution of the conflicting testimony." State v. Thompkins (1997), 78 Ohio St.3d 380, 387. Whether a criminal conviction is against the manifest weight of the evidence "requires an examination of the entire record and a determination of whether the evidence produced attains the high degree of probative force and certainty required of a criminal conviction." State v. Getsy (1998), 84 Ohio St.3d 180, 193.
In a manifest weight of the evidence review, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins, supra. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id. at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. "The weight to be given the evidence and the credibility of the witnesses are primarily issues to be decided by the trier of fact." State v. Burdine-Justice (1998), 125 Ohio App.3d 707, 716. The trier of fact has the benefit of seeing and hearing the witnesses testify and is in the best position to determine the facts of the case. In re Good (1997),118 Ohio App.3d 371, 377.
In the present case, appellant contests Bronson's testimony, asserting that Bronson had been drinking heavily and smoking marijuana on the night of the crime and later admittedly lied to the police regarding his own involvement. Thus, he claims Bronson was not a credible witness. However, as stated above, the issue of witness credibility is best left to the trier of fact. Our own review of the record also does not persuade us that Bronson was not being truthful. To the contrary, his testimony seemed forthright regarding appellant's involvement, as well as his own. Although appellant tries to attack Bronson's credibility by pointing out the inconsistencies in the statements he made to Hill and the police early in the investigation, Bronson explained that he originally lied because he was scared and he looked up to appellant, his cousin. Bronson also explained that although Hill testified that he told her appellant's girlfriend was the one who drove the car to dispose of the safe, he testified that perhaps Hill misunderstood him and that he actually told her that Smith had driven a car belonging to appellant's girlfriend. The jury apparently chose to find him credible, and we cannot find error in such determination.
After reviewing the record, weighing the evidence and all reasonable inferences, we find that the trial court's decision was not against the manifest weight of the evidence. Appellant argues that there was a lack of physical evidence, particularly fingerprints on the recovered items. However, the lack of physical evidence fails to convince us that the jury lost its way. Although Detective Bodiker testified that no fingerprints were identified on the safe or crowbar, he also stated that this obviously does not mean that noone ever touched the objects. Similarly, appellant points out that his fingerprints were not found at the scene of the crime and he was not seen in the surveillance footage. However, the role appellant is accused of playing in the crimes would not have necessarily put him in direct physical contact with the pizza shop. Appellant's arguments fail to persuade us that the trial court clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed. See Thompkins, supra. Importantly, this is not an exceptional case in which the evidence weighs heavily against the conviction. See id. Therefore, the trial court's decision was not against the manifest weight of the evidence. Appellant's second assignment of error is overruled.
Accordingly, we overrule appellant's two assignments of error, and affirm the judgment of the Franklin County Court of Common Pleas.
DESHLER, J., and BRYANT, P.J., concur.